AMERICAN SAMOA GOVERNMENT

v.

MALESALA aka TAULAGA MASANIAI, Defendant

High Court of American Samoa
Trial Division

CR No. 9-87

May 21, 1987

Before REES, Chief Justice, and TAUANU'U, Chief Associate Judge.

Counsel: For the Government, William Wallace,
Assistant Attorney General
For the Defendant, Charles Ala'ilima

Defendant was convicted of Sodomy and Sexual Abuse in the First Degree. The victim was his

sixteen-year-old daughter. He asks for reconsideration of the verdict and for a new trial on the grounds that exclusion of the public from the courtroom during the testimony of the victim violated his right to public trial, and also on the ground that the government had not proved "sexual intent" in connection with the acts he performed on the girl.

## I. Public Trial

The public was excluded from the courtroom only during the testimony of the complaining witness, who had requested such exclusion. The prosecutor indicated to the Court that the girl had asked that she not be required to repeat the details of the sexual acts in front of family members. The court held a public hearing, in accordance with the holding in Globe Newspaper Co. v. Superior Court, 457 U.S. 596 (1982), so that members of the press and public could present any arguments they might have in favor of their being allowed to remain in the courtroom during the victim's testimony.

The only people who requested to stay were family members. Most of these people were members of the immediate family of the defendant and the victim, and they testified that they wished to be in the courtroom in order to influence their sister's testimony. The testimony of her half-brother Joe Masaniai was that he wanted to "look her in the eye" so that she would not tell the vicious lies she had been telling about their father. Taking into account the demeanor of the witnesses and the history of alleged harassment of the girl by family members, the court determined that what they really wanted was to deter her from telling her story without reference to whether it was true or not. (Subsequent events bore this out: at trial it became clear that Mr. Masaniai had coached his family in an elaborate network of lies about the victim of his crimes, in an effort to convince the court that none of the events she complained of had ever happened and that she was a pathological liar. At an earlier time, however, his strategy had been somewhat different: he had bragged to disinterested persons, two of whom testified at trial, that his "checking" of his daughter's private parts was the will of God and that the practice was the cause of his other daughters' success in life.)

The other group of people who wished to remain in the courtroom consisted of two persons more distantly related to the defendant and the victim, who testified that they were curious about what the true facts were. Although this is the usual interest that members of the public have in a courtroom proceeding, it is outweighed in some cases both by the interest of a victim (especially a minor victim) in not becoming an object of salacious curiosity. See Globe Newspaper Co., supra, 457 U.S. at 607-08 (footnotes omitted):

> We agree . . . that the first interest --- safeguarding the physical and psychological well-being of a minor--- is a compelling one . . . . A trial court can determine on a case by case basis whether closure is necessary to protect the welfare of a minor victim. Among the factors to be weighed are the minor victim's age, psychological maturity and understanding, the nature of the crime, the desires of the victim, and the interests of parents and relatives.

In this case the court did its best to comply with the requirements of the Globe case --- which, incidentally, involved the public's first amendment rights rather than the sixth amendment right of a defendant. The court was (and is) convinced that exclusion of the public during the victim's testimony was necessary. The curiosity of distant relatives and other members of the public was outweighed by the need to protect her psychological well-being. The interest of the closer relatives was stronger, but so were the reasons for excluding them. They were a large, forceful, and demonstrative group of people who were determined to intimidate the victim. Both her interest in not being subject to such pressure and the interest of the court and the public in enhancing the possibility that the victim would testify truthfully and thoroughly would have justified the exclusion, even if the intimate nature of her testimony had not. See, e.g., United States v. Eisner, 533 F.2d 987 (6th Cir. 1976); United States ex rel. Bruno v. Herold, 408 F.2d 125 (2d Cir. 1969).

## II. Sexual Intent

The "sexual abuse" statute, A.S.C.A. § 46.3612, requires that there be a touching of the private parts without consent and "for the purpose

of arousing or gratifying sexual desire of any person." A.S.C.A. § 46.3601. Although Mr. Masaniai told his daughter that his intent was to see whether she was a virgin or not, he took several minutes to do this, and whispered to her repeatedly that she was a good girl and that he loved her. We inferred sexual intent from these circumstances and from the nature of the act.

The sodomy statute, A.S.C.A. § 46.3611, does not require any proof of sexual intent; the penetration of the genitals with the hand suffices. We decline the invitation of defense counsel to read a requirement of sexual intent into the statute.

This is not to say, as defense counsel suggests, that a doctor could be convicted for performing a gynecological examination; that was clearly not the intent of the legislature. Despite the similarity of Mr. Masaniai's act to certain ceremonies that were said to be part of the pre-Christian Samoan tradition, we emphatically do not believe the legislature intended any exemption for such acts. Indeed, there is no reason to believe that sexual pleasure was not derived from them. In any case, such acts were specifically prohibited by statute prior to the enactment of the American Samoa Code Annotated, and the statutes we have cited are broad enough to prohibit them along with what Mr. Masaniai did.

The motion is denied.